Good morning, your honors. Donald Cook for the appellant, Mr. Smith. If we take this incident, had a camera, and we roll the film up to the point in time that officers Quinn and Reinbold approached the porch, but before any force is used, what we know is that Mr. Smith disobeyed repeated commands to put his hands on his head, disobeyed commands to turn around, and basically had not complied with the officer's commands. Now, if at the point that Officer Quinn gets this sort of final act of disobedience, he doesn't turn around, doesn't put his hands on his head, Officer Quinn pulls out his gun and shoots Mr. Smith, obviously that would have been excessive force. We've got the Garner rule. But that's a different analysis, deadly force versus excessive force. I know you contend that the dog was a deadly force, but we would have to assume that. And so you have a different analysis when you have deadly force as opposed to excessive force. Would you agree with that? Well, I'm not making the deadly force argument here. I'm just using the Garner rule for the point of showing that the force, whether you call it deadly or not, would be excessive. However, that excessive force would not defeat the 148 violation, because the 148 violation occurred before Officer Quinn, in my hypothetical, used his gun. Your argument is, and I assume you were here in the courtroom listening to the last argument. Yes, sir. The 148 offense was complete at the time he refuses to comply with the lawful orders of the policeman in the exercise of the policeman's duty. Yeah, it's not in my argument. They admit it in their brief. Officer Quinn admitted it in his deposition. Officer Quinn is very clear. He says the 148 is finished as soon as he doesn't turn around. That's right. And, you know, you go in on the criminal case and you want to argue about what happened after the offense was committed. Well, that's irrelevant to the criminal charge, because, again, the offense, the 148, is made out at the time that Mr. Smith has disobeyed the officer's command. Several incidents here. We have the 148 was complete at the time the pepper spray was used. The 148, it was complete. You could say there were multiple 148s here, but certainly there was a 148 offense before any force was used. And the first force used was the pepper spray. So your view is that at the time someone disobeys an order, the 148 is complete and the officer cannot use force to compel compliance. Is that your argument? No, that's not my argument. An officer can use force to, obviously, make an arrest, overcome resistance, etc. It's not an element of a 148 that an officer used force or not used force. The elements are, obviously, the defendant's behavior and that the officer be acting in the lawful performance of his duties. Here, the officers were lawfully ordering Mr. Smith to put his hands up, to turn around, etc., come off the porch, all of which he disobeyed, all of which occurred before the officers used any force against him. So once the 148 is made out, if an officer then thereafter uses excessive force, my hypo was the shooting, just because that obviously would have been extreme. A successful 1983 claim is not necessarily inconsistent with the 148 violation. What about the California case law that says a conviction under 148 necessarily includes as an element that the police officers were acting lawfully in terms of the force that was used? Well, I have no dispute about that's the law. The question is one of timing. The timing here was that the disobedience occurred before the officers used any force. And at that point, is the officer acting within, that is, when the officer is giving the lawful commands, is the officer acting within the course and scope of his employment lawfully as a police officer? He is. Walk me through this. Sure. The offense is complete wit. What is the first disobedience? Well, the first disobedience you can say when Officer Reinbold, who initially spoke with Mr. Smith, was telling him, look, we have to talk to you, you know, come off the porch, I want to see your hands. Was he guilty of 148 then? Sure. That would have supported a 148. What was the next thing that happened? Well, there were further commands by Officer Reinbold. Would she disobey? Would she disobey. Was another 148 then committed? Sure. You could make a 148 on that. Then you have Officer Quinn stepping into it, and he's ordering Mr. Smith to put his hands up. And he finally gives an order, put your hands on your head and turn around. Mr. Smith disobeys that. That's another 148. That's a 148. And the question here is burden. Who has the burden to show the basis for the 148 conviction? I mean, to put a stopwatch on this and say each time he gives an order and each time it's disobeyed, it's another account, kind of underscores to me the folly of trying to do it this way. It sounds to me like this is one continuous event, and not each and every order is a separate violation. And I think that's kind of the way the district judge analyzed it, too, is that this is one continuous series, and it wasn't necessary to charge it with 15 counts of it. Well, I don't think the district court analyzed it that way. I mean, having tried 148 cases in state court from the defense side, at some point we say, tell us what the 148 is, and they tell us. Is it this disobedience? Is it that disobedience? Or is it both of them? If he flails his arm, that's not another assault, is it? It's not another resisting. It's all part and parcel. Well, it depends on what the factual scenario is at hand. As I say, in trying these criminal cases, at a certain point we... Well, why is it the factual scenario is they're trying to arrest this guy, and they're giving him a series of orders, and he disobeys all of them. Sure. If you treat that whole sequence from the time Officer Reinbold gives his initial command to the time Officer Quinn gives his command of put your hands on your head, turn around, as a single 148, all of that still precedes the officer's use of force. If thereafter the officer uses excessive force, which of course would not be in the lawful performance of his duties, that's not inconsistent. It doesn't transmute the earlier 148 violation into a non-violation. And when you look at the Martinez... Can I interrupt for a minute? Sure. What I'm trying to do, and I think what all of us on the bench at the moment are trying to do, is to figure out the application of Heck. Heck says that you have to bring a habeas if a successful 1983 suit would necessarily invalidate the earlier conviction. And you're saying to us that because there were things that could have constituted and in your view did constitute 148 violations before the application of any force, unnecessary or otherwise, a finding of excessive force does not necessarily invalidate the 148. That's all you need to say. Yeah, that's correct. And then it's a question of... If you have a 148 conviction, and you have a 148 conviction based upon those early events, the 1983 suit can go forward because obviously then the success of the 1983 suit does not necessarily invalidate that conviction. Correct. Yeah. That's it. Exactly. Now, as far as the basis of the 148, it's their burden. They never showed the basis of the 148 conviction. Counsel, what case authority are you relying upon to support your argument? Well, of course, we've got the Sanford case you're already familiar with. Martinez v. City of Albuquerque... But the Sanford case is a little different in that the defendant in that case had been handcuffed before the force. Yeah, but it doesn't... I'm just saying, is there any other case you're relying upon? Because I see a distinction with Sanford. So is there any other case that you can cite to support your position? Sure. Martinez v. City of Albuquerque is a Tenth Circuit case. It deals with a New Mexico law that is, for all practical purposes, the same as 140 and their California law. It's cited in a reply brief. And it's a very good analysis in Martinez about this heck issue and how you reconcile it. And the fact there, you had someone who was supposedly continually resisting right to the point of rolling the car window up on the officer's arm, to which the officer responded by... Or officers responded by striking or hitting the plaintiff in the 1983 action. And the Tenth Circuit said, no, that's not necessarily... Would not be necessarily inconsistent with the conviction. Because, again, they focused on the timing. The officer's lawful command occurred before the officer's used force. You know, your timing's almost run. And I'm assuming we get past the heck issue, and I say that only as an assumption. What was Mr. Smith wearing? He was... His pajamas, some... So he has his hands in his pockets. In the pockets of his PJs. Yeah, basically. They're like khaki, kind of like briefer, boxer shorts, kind of brief, but they had some pockets in them. And... But the officer's concern is, is he carrying a concealed weapon in his... It has to be a concealed weapon in his PJs. Correct. Now, of course, the officer already knew from the radio transmission that there was no gun because his wife had told... The dispatcher had asked his wife, was there any weapons? She said, no, no weapons. I know I'm over my time. If I may have a minute for reply. Thank you. Good morning. Elizabeth Pfeffer appearing on behalf of the appellees and defendants below. City of Hemet, its officers, and its police chief. The appellant tries really, really hard to get away from heck, and specifically footnote six, which says basically a 148, a resisting arrest conviction, bars 1983 case. Well, this was not resisting arrest. This is 148. It's resisting, obstructing, delaying. That's correct, Your Honor. That's correct. The appellant is trying to make this... Footnote six talks about resisting arrest. That's correct. Okay. Right. Just as long as we got our vocabulary straight. He's trying to make this a Sanford v. Motts case, which it's not. As has been discussed in Sanford, the plaintiff Sanford was arrested for assaulting an animal control officer. It was a tussle over an animal control. After she was handcuffed, a Compton police officer, so not the one she pled guilty to assaulting, but a Compton police officer, punched her in the face. And that's what that case was about. So in that case, we had a completed offense. Correct. And after the completed offense, she gets punched. After the offense and after she was taken into custody for the offense. Well, after the completed offense... That's correct. ...which is the issue, then she gets whacked. That's correct, Your Honor. Now, what's the offense in this case? The offense, Your Honor, is the entire resistance. The offense, and he pled, right? He did, Your Honor. To 148. Correct. And what did he say in his plea? We don't have the transcript of the plea. So all we know is that there's a plea of guilty. Or is it a no-law? It was a guilty plea, Your Honor. We have a certified copy of the plea. All we know is that we have a guilty plea to 148. That's correct. So anything that constitutes a violation under 148 is potentially that which he pled to. Well, we would say that anything that was in the police report that was attached to the DA's filing. Well, but he didn't plead guilty to the police report. He pled guilty to 148. That's correct. Now, are you saying that it's not a potential 148 violation when somebody is up on the porch of his house, has given several very clear orders, and he very explicitly refuses to obey any of them? Is that not a 148 violation? That is a 148, Your Honor. So the offense is complete at that point. That one particular aspect. He continued to resist. Well, but there is a 148 offense complete at that point. Correct. And he pled guilty to a 148 offense. Correct. Therefore, any 1983 suit premised on excessive force is not inconsistent with that which he pled guilty to because at the time he has that completed offense, there's been no force whatsoever, excessive or otherwise. Your Honor, I respectfully disagree with that. Well, in this instance, it was a continuous violation. I don't think the appellant never said, gee, I thought I was only pleading guilty to not stepping off the porch. I never thought my tussle with officers when I was on the ground and three officers were trying to handcuff me, I wouldn't let them. I didn't think that was part of the guilty plea. That's not part of the record. But the guilty plea just says I plead guilty to 148. And the heck inquiry is, is a successful 1983 necessarily going to invalidate the 148? And I don't think it necessarily invalidates the 148 because you just said we have a completed 148 before any violence whatsoever takes place. That was not the only 148 that he pled. But he pled guilty to only 148. That's correct. So how does a plea, how does a 1983 suit based on excessive force after the completion of a 148 necessarily invalidate the plea of guilty to a 148? It's only 148 in a sequence of events. The undisputed evidence in this case, Your Honor, is that he never ceased resisting until he was taken into custody. That's the undisputed evidence here. It's also undisputed that you can use force to overcome resistance. So this is, even though an officer isn't required to go up each and every step of the ladder of force, this is a classic case of escalation. Oh, that's a different question with which I'm on quite a different page on that one. That is to say, if we get to the question of excessive force, then the question is, was this force excessive? And this may well not have been excessive force. I'm after the heck questions whether we can even get to that issue in the first place. Counsel, how does the Sussex opinion affect your argument, if at all? The Sussex case? Yes. I'm sorry. I think it further bolsters it. Again, just based on that case and the Sanford case in particular, they're all factually distinguishable, just as in the Smithart v. Howard case, another case where this Court said, heck, didn't apply. In that case, the plaintiff, Mr. Smithart, was convicted of assault with a deadly weapon, which was driving his truck in a way to endanger the lives of the police officers. After he exits his truck, and so he doesn't have access to that deadly weapon, he's then beaten by the police. And he pled to the assault with the truck, but that didn't invalidate his 1983 case. So, again, it's fact specific. Didn't the Sussex case say, though, that excessive force by a police officer is not within the performance of the officer's duty, so a conviction under 148 necessarily implies that there was no excessive force? That is correct, Your Honor. And so then if there is a 148 conviction, under California law at least, it implies that the force used was reasonable. That is correct. You mentioned that the transcript of the guilty plea is not available, or wasn't provided, I should say. That's correct. What was provided to the district judge? Was it deposition? No, Your Honor. A certified copy of the plea, the docket sheet, and then the plaintiff's stipulation in his deposition that there was a guilty plea to the 148. Wasn't his deposition also? His deposition was lodged, and several excerpts of the deposition were attached to the summary judgment motion. That was submitted by you, by your side? That's correct, Your Honor. Was there anything by their side to contradict that? No, Your Honor. So I said there was a stipulation during the deposition that he did plead guilty. And what is it in the plea? Or maybe could you direct me on that? Because I've got the excerpts here. Could you direct me on the excerpts to what we know about the plea? I believe it's page 69 and 70, I believe. Let me confirm that. Is it the supplemental excerpts or the excerpts? Let's see. I think maybe it was. I'm sorry. 95, Your Honor. 95 of the regular excerpts? That is correct, Your Honor. I thought it was 93 or something. Right. It's 91 through 93. And also in his deposition, stipulation is located at page 75 of the record. Okay. And where is it? Can you direct me on these pages to where it is? I think on page 91, battery and resisting arrest. It's filed. Is that earlier? Right. That's just the code the court entered. Oh, that's the domestic violence end. Okay. It just says top of page 93, defendant pleads guilty to counts one and two. Court finds plea admission is free and voluntary. Defendant knows and understands constitutional rights, nature of charges and consequences of his or her plea. Court accepts plea admission to probation violation. Counsel joins plea. So all we know is that he pled to 148. That's correct. Without any particular admission to any particular facts. No. Okay. I'd like to direct your attention to. It's Palin's excerpt of record volume two. The deposition of Officer Quinn. He says on page 244 that the 148 defense is complete while he's up there on the porch before anybody's applied any force to him. Do you disagree with that statement by Officer Quinn? I only disagree with that. He said it was complete. He said that was a 148 failing to step off the porch. That's correct. I guess he didn't say complete. But there is a 148 offense there already. Absolutely. Okay. So you don't disagree with Officer Quinn on that? No. But just again, for the record, you're on the arresting officers, not Officer Quinn. It's Officer Reinvold. I know. But the 148 doesn't talk about arrest. The 148 talks about delay or obstruction. That's correct. And so we have a 148 violation right there. That's correct. Okay. Right. The officers were called out in response to a domestic violence call. They attempted to ascertain the facts, and Mr. Smith resisted their ability to do that. He then resisted their attempt to take him into custody for the offense. And then he does some more stuff. That's right. Right. Okay. So, again, I have nothing. You have 33 seconds left. Again, I have nothing. Can I even tell us why the dog bites are okay? Just briefly, Your Honor, this isn't a case where he failed to step off the porch and they used deadly force or excessive force. This is a clear escalation of force. You have one officer whose verbal presence wasn't enough. In fact, Mr. Smith went back in the house after Officer Reinbold told him to put his hands up. More officers arrived with the canine. The verbal commands and physical presence of four officers plus a dog wasn't enough. They then continued the verbal commands. They pepper-sprayed him once. It didn't work. They pepper-sprayed him again. It didn't work. He continued to resist. He admitted he continued to resist. After that, they used the dog. He said, okay. He said he'd stop, and he didn't stop. He kept resisting. He kept his arm tucked under him. And finally, after the second dog bite is when the force ended and the arrest was complete. There were three separate dog bites. There were one, two, and then there was a different time, and then there was a third bite. Now, he was treated and released. I gather that there was no long-term injury suffered as a result of the bites. Each bite lasted a matter of seconds. That is correct, Your Honor. He received no stitches, no infections. There were just scratches. The officer, Quinn, testified that his dog has flat cat teeth, so he's actually not even capable of the deep puncture wounds. Thank you. Thank you. 148 covers a wide range of conduct. In this case, there's a lot of conduct. It's defendant's burden to come in and show the basis for the 148 conviction. That's what Sanford held. They have not carried that burden. They cannot carry that burden given the state of the record. This claimed that the 148 was one continuous violation. Well, that may be counsel's argument, but that's not what the record in the criminal case shows. The record is silent as to the precise factual basis for the 148 charge. And given what we know of the facts, given that we know there's a 148 violation complete before any force is used, they haven't carried their burden. A successful 1983 claim for excessive force would not be necessarily inconsistent. You want to use the criminal case to preclude the 1983 case, do it as was done in the Cunningham v. Gates decision, which is discussed in the brief. Mr. Smith got sprayed, knocked down, beat up, a dog sicced on him within an inch of his life because he mouthed off with police officers. They didn't have to do it. It was punishment. Thank you. Thank you. The case has started. You just submitted.
judges: Silverman, W Fletcher, Rawlinson